UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Kimberly Pardo, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 5:21-cv-69 |
| Bank of America, N.A.; Cavalry Portfolio Services, LLC; Portfolio Recovery Associates, LLC; Absolute Resolutions Investments, LLC; Equifax Information Services, LLC; Experian Information Solutions, Inc.; and TransUnion, LLC | § § § § § § § § § | |
| Defendants. | § § | |

# COMPLAINT

## INTRODUCTION

1. This is an action brought by an individual consumer for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is a resident of the County of Bexar, Texas.

5. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7. Defendant Bank of America, N.A. ("BOA") exists and operates under the laws of the State of Texas and is a furnisher of consumer credit information to consumer reporting agencies.

8. Defendant Cavalry Portfolio Services, LLC ("Cavalry") exists and operates under the laws of the State of Texas and is a furnisher of consumer credit information to consumer reporting agencies.

9. Cavalry was at all relevant times engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

10. Cavalry is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

11. Defendant Portfolio Recovery Associates, LLC ("PRA") exists and operates under the laws of the State of Texas and is a furnisher of consumer credit information to consumer reporting agencies.

12. PRA was at all relevant times engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

13. PRA is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

14. Defendant Absolute Resolutions Investments, LLC ("ARI") exists and operates under the laws of the State of Texas and is a furnisher of consumer credit information to consumer reporting agencies.

15. ARI was at all relevant times engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

16. ARI is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

17. Defendant Equifax Information Services, LLC is a limited liability company existing and operating under the laws of the State of Texas that engages in the business of maintaining and reporting consumer credit information.

18. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

19. Defendant Experian Information Solutions, Inc. is a limited liability company existing and operating under the laws of the State of Texas that engages in the business of maintaining and reporting consumer credit information.

20. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21. Defendant TransUnion, LLC is a limited liability company existing and operating under the laws of the State of Texas that engages in the business of maintaining and reporting consumer credit information.

22. TransUnion is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

23. In or around October 2017, Plaintiff became a victim of identity theft.

24. She provided her personal information, including her driver's license and social security number, to sign up for what she thought was a membership in an educational program.

25. The program ultimately turned out to be a scam and became the subject of an FTC enforcement action.

26. Shortly after Plaintiff provided her personal information, she received multiple credit cards in the mail.

27. Thinking they were routine solicitations, Plaintiff ignored them.

28. Later she would receive statements from the credit accounts, and then learned that multiple charges had been made in her name, without her knowledge or authorization.

29. She immediately tried to contact the company, and then learned the CEO had been arrested for fraud and the company shut down.

30. Although Plaintiff had never approved any of these accounts to be taken out in her name, nor did she authorize any of the charges made, she was unsure of what her rights were and fearful of the consequences of what had happened, so Plaintiff began making payments on the accounts.

31. These accounts include those reported by BOA, Cavalry, PRA, and ARI (the "Debts").

32. Upon information and belief, these Debts arose from transactions in which the money, property, insurance, or services that were the subject of the transactions were incurred, or allegedly incurred, primarily for personal, family, or household purposes.

33. Plaintiff would later lose her job, and was no longer able to continue paying the Debts.

34. Cavalry, PRA, and ARI acquired the Debts after they were allegedly in default.

35. Cavalry, PRA, and ARI each use instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

36. Cavalry, PRA, and ARI each regularly collect or attempts to collect, directly or indirectly, debts once owed or due, or once asserted to be owed or due, another.

37. Upon review of her credit reports, Plaintiff observed that BANA, Cavalry, PRA, and ARI were reporting information that Plaintiff owed past due balances on the Debts.

38. Because the Debts were fraudulently incurred, these representations that Plaintiff was responsible for these Debts was false.

39. The false information regarding the Debts appearing on Plaintiff's consumer reports harms Plaintiff because it does not accurately depict Plaintiff's credit history and creditworthiness.

40. Equifax, Experian, and TransUnion published the false information regarding Plaintiff to third parties.

### WRITTEN DISPUTE

41. On or about October 29, 2020 Plaintiff sent written dispute letters to Equifax, Experian, and TransUnion, disputing the inaccurate information regarding the Debts reporting on Plaintiff's consumer report, provided supporting documentation, including a copy of an Identity Theft Report submitted to the FTC, and also requesting a

description of the procedures used to determine the accuracy and completeness of the information Plaintiff was disputing (the "Dispute").

42. Upon information and belief, Equifax, Experian, and TransUnion forwarded Plaintiff's Dispute to BANA, Cavalry, PRA, and ARI for reinvestigation.

43. Upon information and belief, BANA, Cavalry, PRA, and ARI each received notification of Plaintiff's Dispute from Equifax, Experian, and TransUnion.

44. BANA, Cavalry, PRA, and ARI each failed to conduct a reasonable investigation, failed to contact Plaintiff or any third-parties, and failed review underlying account information with respect to the disputed information and the accuracy of the disputed information.

45. Equifax, Experian, and TransUnion each failed to conduct an investigation, contact Plaintiff, contact third-parties, or review underlying account information with respect to the disputed information and the accuracy of the disputed information.

46. BANA, Cavalry, PRA, and ARI each failed to instruct Equifax, Experian, and TransUnion to remove the false information reporting on Plaintiff's consumer report.

47. Equifax, Experian, and TransUnion each employed an investigation process that was not reasonable and did not remove the false information identified in Plaintiff's Dispute.

48. Equifax, Experian, and TransUnion each employed internal processes that were not reasonable and failed to ensure the maximum possible accuracy of the information reported on Plaintiff's consumer report.

49. At no point after receiving the Dispute did any Defendant communicate with Plaintiff to determine the veracity and extent of Plaintiff's Dispute.

### COUNT I – BANA, Cavalry, PRA, and ARI

(Fair Credit Reporting Act Violation – 15 U.S.C. § 1681s-2(b))

50. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

51. After receiving the Dispute, BANA, Cavalry, PRA, and ARI failed to correct the false information regarding the Debts reporting on Plaintiff's consumer report.

52. BANA, Cavalry, PRA, and ARI violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's Dispute; by failing to review all relevant information regarding Plaintiff's Dispute; by failing to accurately respond to credit reporting agencies; by verifying false information; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of false representations to the consumer credit reporting agencies, among other unlawful conduct.

53. As a result of this conduct, action, and inaction of BANA, Cavalry, PRA, and ARI, Plaintiff suffered damages, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

54. The conduct, action, and inaction of BANA, Cavalry, PRA, and ARI was willful, rendering each liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

55. In the alternative, BANA, Cavalry, PRA, and ARI each was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

56. Plaintiff is entitled to recover costs and attorneys' fees from BANA, Cavalry, PRA, and ARI each pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### COUNT II – Equifax, Experian, and TransUnion

(Fair Credit Reporting Act Violation – 15 U.S.C. § 1681e(b))

57. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

58. After receiving the Dispute, Equifax, Experian, and TransUnion failed to correct the false information reporting on Plaintiff's consumer report.

59. Equifax, Experian, and TransUnion each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

60. As a result of this conduct, action and inaction of Equifax, Experian, and TransUnion, Plaintiff suffered damage, and continues to suffer, actual damages, including economic loss, damage to reputation, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

61. The conduct, action, and inaction of Equifax, Experian, and TransUnion was willful, rendering each liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

62. In the alternative, Equifax, Experian, and TransUnion each was negligent, and Plaintiff is entitled to recover damages under 15 U.S.C. § 1681o.

63. Plaintiff is entitled to recover costs and attorneys' fees from Equifax, Experian, and TransUnion each pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III – Equifax, Experian, and TransUnion

(Fair Credit Reporting Act Violation – 15 U.S.C. § 1681i)

64. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

65. After receiving the Dispute, Equifax, Experian, and TransUnion failed to correct the false information reporting on Plaintiff's consumer report.

66. Equifax, Experian, and TransUnion each violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit files after receiving actual notice of such inaccuracies, by failing to conduct lawful reinvestigations, by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files, and by failing to provide Plaintiff with a description of its procedures used to determine the accuracy and completeness of the disputed information.

67. As a result of this conduct, action and inaction of Equifax, Experian, and TransUnion, Plaintiff suffered damage, and continues to suffer, actual damages,

including economic loss, damage to reputation, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the trier of fact.

68. The conduct, action, and inaction of Equifax, Experian, and TransUnion was willful, rendering each liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

69. In the alternative, Equifax, Experian, and TransUnion each was negligent, entitling Plaintiff to recover damages under 15 U.S.C. § 1681o.

70. Plaintiff is entitled to recover costs and attorneys' fees from Equifax, Experian, and TransUnion each pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV – Cavalry, PRA, and ARI

(Fair Debt Collection Practices Act Violation – 15 U.S.C. § 1692e)

71. Plaintiff re-alleges and reaffirms the above paragraphs as though fully set forth herein.

72. Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

73. "The FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

74. "It is a remedial statute that we 'construe . . . broadly, so as to effect its purpose.'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)).

75. More broadly, the FDCPA was enacted in order to eliminate abusive debt collection practices, which contribute to the number of personal bankruptcies, marital instability, loss of employment, and invasions of privacy as well as insure that debt collectors who refrain from using such practices are not competitively disadvantaged. *See, e.g.,* 15 U.S.C. § 1692(a), (e); *Lesher v. Law Offices of Mitchell N. Kay, PC,* 650 F.3d 993, 996 (3d Cir.2011); *Wilson,* 225 F.3d at 354.

76. "[C]ourts have analyzed the statutory requirements [of the FDCPA] 'from the perspective of the least sophisticated debtor.' This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor." *Campuzano-Burgos v. Midland Credit Management, Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (quoting *Rosenau*, 539 F.3d at 221); *see also Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993) ("The basic purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

77. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148-49 (3d Cir. 2013) (quoting *Lesher,* 650 F.3d at 997).

11

78. The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. § 1692e; *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed").

79. Included as an example of conduct that violates section 1692e is the false representation of the character, amount, or legal status of a debt. 15 U.S.C. § 1692e(2)(A).

80. Thus, the plain-language of the FDCPA makes it clear that under the strict liability framework, any false representation as to the amount of the debt is sufficient to show a violation of the FDCPA. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("under § 1692e ignorance is no excuse").

81. Under the same general prohibition of false, misleading, or deceptive debt collection practices, the FDCPA prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false. . . ." 15 U.S.C. § 1692e(8).

82. Cavalry, PRA, and ARI each violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the Debts, including by reporting false information to the credit reporting agencies concerning Plaintiff, and by failing to correct the false information once disputed.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks a reasonable and fair judgment against Defendants for willful noncompliance of the Fair Credit Reporting Act and seeks remedies as defined by 15 U.S.C. § 1681 and demands:

1. Trial by jury.

2. Actual damages to be proven at trial, or statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), of not less than $100 and not more than $1,000 per violation;

3. Punitive damages, pursuant 15 U.S.C. § 1681n(a)(2), for each Defendant's willful violation;

4. The costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 15 U.S.C. § 1681n(a)(3); and

5. Any further legal and equitable relief as the court may deem just and proper in the circumstances.

**WHEREFORE**, Plaintiff seeks a reasonable and fair judgment against Cavalry, PRA, and ARI for noncompliance of the Fair Debt Collection Practices Act and seeks remedies as defined by 15 U.S.C. § 1692 and demands:

1. Trial by jury.

2. Adjudging that Cavalry, PRA, and ARI each violated 15 U.S.C. § 1692e;

3. Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

4. Awarding Plaintiff actual damages to be proven at trial, pursuant to 15 U.S.C. § 1692k(a)(1);

5. Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

6. Any further legal and equitable relief as the court may deem just and proper in the circumstances.

Dated: January 27, 2021

                              */s/ Joseph Panvini*
                              Joseph Panvini
                              McCarthy Law, PLC
                              4250 North Drinkwater Blvd, Suite 320
                              Scottsdale, AZ  85251
                              Telephone: (602) 456-8900
                              Fax: (602) 218-4447
                              Attorney for Plaintiff